Helaine M. JEFFERS, Plaintiff,

v.

Tommy G. THOMPSON, Secretary, U.S. Department of Health & Human Services Defendant.

No. CIV. WDQ–02–3533.

United States District Court,
D. Maryland,
Northern Division.

May 8, 2003.

David H Shapiro, Swick and Shapiro PC, Richard L Swick, Swick and Shapiro PC, Washington, DC, for Helaine M. Jeffers, Plaintiff.

Ariana Wright Arnold, Office of the United States Attorney, Baltimore, for Tommy G. Thompson, Secretary, Health and Human Services, Defendant.

## MEMORANDUM OPINION

QUARLES, District Judge.

Helaine M. Jeffers ("Ms.Jeffers"), a federal employee, sued her employer, Tommy G. Thompson, Secretary, U.S. Department of Health and Human Services ("HHS"), for alleged discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e through 2000e–17, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. Ms. Jeffers claims that HHS denied her a promotion because of her race, her gender, her race-and-gender combined, and her age. She also claims that HHS retaliated against her when she complained that she had suffered illegal discrimination. HHS has filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. The issues have been fully briefed by the parties, and no oral hearing is necessary. Local Rule 105.6 (D.Md.).

## BACKGROUND

Ms. Jeffers, an African–American woman, was born July 18, 1941. 11.15.99 Jeffers Aff. at 1. In November 1996, she was acting co-director of the Office of Program and Organizational Services in the Medicaid Bureau, Health Care Financing Administration ("HCFA"), HHS. 11.05.98 Jeffers Aff. at 1. HHS classified her position as a Supervisory Health Insurance ("SHI") Specialist GS–14. *Id.*

On November 12, 1996, HHS posted two vacancy announcements: H–96–283 and H–96–284. Def.'s Mot., Ex. 1 at 16, Ex. 2 at 7. Both announcements advertised a total of four, equal-ranking SHI Specialist GS–15 positions in HCFA's Medicaid Bureau. *Id.* Announcement H–96–283 sought applications for two co-directors of the Office of Medical Services, announcement H–96–284 for two co-directors of the Office of Long Term Care Services. *Id.* The application period for both announcements ended December 9, 1996. *Id.*

Ms. Jeffers submitted a single application for promotion in response to both. *Id.*, Ex. 4. Thereafter, a single selection panel reviewed all applications. *Id.*, Ex. 1 at 26–27, Ex. 2 at 14. The three-member panel included one Caucasian male, one Caucasian female, and one African–American male. Def.'s Mot. at 2. The same day, January 22, 1997, the panel ranked seven applicants "best qualified" for the H–96–283 positions and five applicants "best qualified" for the H–96–284 positions.[1]

---

1. Ms. Jeffers was the sole African–American among all the "best qualified" applicants.

Cade Decl. ¶ 6. At fifty-five years of age, she also appears the oldest. Def.'s Mot., Ex. 1 at

*Id.,* Ex. 1 at 27–28, Ex. 2 at 14. Three applicants, including Ms. Jeffers, made both "best qualified" lists. *Id.; see also id.,* Ex. 1 at 34, Ex. 2 at 17. The panel's recommendations were forwarded to the same ultimate decision-maker, David Cade ("Mr.Cade"), the acting director of the Medicaid Bureau. Cade Aff. ¶¶ 2–4. Mr. Cade had been appointed acting director in September 1996. Cade Dep. at 7. As such, he was also Ms. Jeffers' immediate supervisor. *Id.* at 13.

After reviewing their applications, Mr. Cade, an African–American male then under the age of forty, interviewed all applicants on the "best qualified" lists. *Id.* ¶¶ 4–5. The three applicants "best qualified" for both the H–96–283 and the H–96–284 positions, he interviewed only once. *Id.* ¶ 4. He told all those interviewed that he might select a single director for the respective Offices, thereby eliminating two of the four advertised positions. Def.'s Mot., Ex. 8 at 152–53.

On March 21, 1997, Mr. Cade chose Richard Fenton ("Mr.Fenton"), a 44–year-old Caucasian male who had made both "best qualified" lists, to direct the Office of Medical Services (the H–96–283 positions). *Id.,* Ex. 1 at 36. The same day, he chose Mary Jean Duckett ("Ms.Duckett"), a 50–year-old Caucasian female who had made

the "best qualified" list for the H–96–284 positions, to direct the Office of Long Term Care Services (the H–96–284 positions). *Id.,* Ex. 2 at 19. The promotions of Mr. Fenton and Ms. Duckett took effect June 22, 1997. *Id.,* Ex. 1 at 37, Ex. 2 at 20.

At the time of their application, both Mr. Fenton and Ms. Duckett held SHI Specialist GS–14 positions and served as acting co-directors of the Office of Long Term Care Services. *Id.,* Ex. 1 at 39, Ex. 2 at 21, 23. They had been appointed acting co-directors noncompetitively in July 1995. *Id.,* Ex. 1 at 39, Ex. 2 at 23, Ex. 8 at 156–57. Soon after Mr. Fenton had submitted his application, in November 1996, Mr. Cade appointed him acting director of the Office of Medical Services. *Id.,* Ex. 8 at 154–55.

Shortly after Ms. Jeffers learned that she had been rejected, she contacted an Equal Employment Opportunity Commission ("EEOC") counselor and complained that she had been the victim of unlawful discrimination. 11.15.99 Jeffers Aff. at 1. On July 7, 1997, she filed a formal discrimination complaint with HHS.[2] *Id.* That same month, Ms. Jeffers became deputy director of HCFA's Division of Quality Improvement and Training. *Id.* at 2. Pamela

---

34, Ex. 3. The evidence, however, does not disclose the ages of two "best qualified" for the H–96–283 positions. Nevertheless, all but those two exceeded the age of forty, and two other "best qualified" for the H–96–284 positions were at least fifty years old. *Id.,* Ex. 1 at 34, Ex. 2 at 17, Ex. 3. Including Ms. Jeffers, at least two, and probably four, of the seven "best qualified" for the H–96–283 positions were female. *Id.,* Ex. 1 at 34–35. Including Ms. Jeffers, three of the five "best qualified" for the H–96–284 positions were also female. *Id.,* Ex. 2 at 17–18.

**2.** Pursuant to 29 C.F.R. § 1614.108 (2002), HHS investigated her allegations and issued her a Report of Investigation ("ROI") on

March 29, 1999. Ms. Jeffers timely requested a hearing on her complaint (Agency Compl. No. 98–035–HCF) before an EEOC Administrative Law Judge ("ALJ"). The ALJ held a hearing on March 9, 2000, *see* Def.'s Mot., Ex. 8, and issued a decision finding no discrimination on March 15, 2000. *Id.,* Ex. 9. Pursuant to 29 C.F.R. § 1614.110, HHS adopted the ALJ's decision as the Final Agency Decision ("FAD"). Ms. Jeffers appealed that FAD to the EEOC's Office of Federal Operations ("OFO"). *See* 29 C.F.R. § 1614.403. On July 26, 2002, the OFO affirmed the FAD of HHS. Def.'s Mot., Ex. 10. Ms. Jeffers then timely filed the instant civil action. *See* 29 C.F.R. § 1614.407.

V. Vocke ("Ms.Vocke"), a Caucasian woman then either forty-three or forty-four years of age, became her immediate supervisor. Vocke Aff. at 1 & ¶ 8. Ms. Jeffers retained her position as a SHI Specialist GS–14. 11.15.99 Jeffers Aff. at 2. From November 1998 through March 2000, she experienced several problems with Ms. Vocke, all of which she attributes to unlawful retaliation in response to her earlier discrimination complaint.[3]

On November 3, 1998, Ms. Jeffers called Ms. Vocke and left a message on her voicemail saying that she needed to work at home on a paper that was due November 5, 1998. Vocke Aff. ¶ 10; Def.'s Mot., Ex. 14 at 3; 11.15.99 Jeffers Aff. at 2. Ms. Vocke assumed that the paper related to Ms. Jeffers' graduate school work. Vocke Aff. ¶ 10. She therefore told the timekeeper to place Ms. Jeffers on annual leave for November 3, 1998. *Id.* On November 5, 1998, when Ms. Jeffers learned that she had been placed on annual leave for her absence two days earlier, she told the timekeeper that she should not be charged annual leave because she had been working at home on a work-related, personnel matter. 11.15.99 Jeffers Aff. at 3; Vocke Aff. ¶ 12. Uncertain what Ms. Jeffers had done on November 3, 1998, Ms. Vocke asked her to provide a copy of that day's work product by November 9, 1998. 11.15.99 Jeffers Aff. at 3; Vocke Aff.

¶¶ 13–14. Ms. Jeffers refused. 11.15.99 Jeffers Aff. at 3. On November 10, 1998, Ms. Vocke learned that Ms. Jeffers had spent the day in question working on her EEO complaint. *Id.;* Vocke Aff. ¶ 15.

On December 4, 1998, Ms. Vocke issued Ms. Jeffers a memorandum explaining the procedure for requesting official time to work on an EEO complaint. Def.'s Mot., Ex. 18 at 13. Although regulations mandate that a federal employee be granted "a reasonable amount of official time, if otherwise on duty, to prepare the complaint and to respond to agency and EEOC requests for information," 29 C.F.R. § 1614.605(b), HCFA policy required employees to request such time in advance. Def.'s Mot., Ex. 19. Because Ms. Jeffers had not followed the proper procedure, Ms. Vocke informed her that she would be placed on unpaid, absent-without-leave ("AWOL") status for November 3, 1998, unless she submitted a request for annual leave by December 8, 1998. Def.'s Mot., Ex. 18 at 13–14. Ms. Jeffers failed to submit the request, and Ms. Vocke notified her that she would be charged one day of AWOL. *Id.* at 19. When Ms. Vocke later reviewed Ms. Jeffers' official record, however, she discovered that Ms. Jeffers had never actually been placed on AWOL status. Vocke Aff. ¶ 20.

In November 1998, Ms. Vocke also noticed that Ms. Jeffers sometimes came to

---

**3.** On May 3, 1999, Ms. Jeffers filed another *complaint with HHS alleging such retaliation* (Agency Compl. No. 99–019–HCF). HHS investigated and issued her its ROI on May 21, 2001. She then requested a hearing before an EEOC ALJ. Before a hearing could be held, however, HHS and the EEOC informed Ms. Jeffers that her individual complaint involved matters within the definition of a class *action complaint filed on January 29, 2000.* Def.'s Mot., Ex. 11. Accordingly, her individual complaint was subsumed within the class. *Id.* HHS and the EEOC further informed her that if the class action complaint was dis-

missed, HHS would continue processing Ms. Jeffers' claim individually. *Id.* On October 16, 2001, the class action complaint was dismissed. *Id.,* Ex. 12. However, as of the time Ms. Jeffers filed her complaint in this Court, no ALJ had held a hearing on her individual administrative retaliation complaint. Because more than 180 days have passed since HHS forwarded her complaint file to the EEOC, without an ALJ's decision, HHS concedes that her retaliation claim here is ripe. Def.'s Mot. at 5 n.3; *see also* 29 C.F.R. § 1614.109(i).

work late and left early. *Id.* ¶¶ 22–23. On December 6, 1998, Ms. Vocke therefore ordered her to sign in and out on a daily basis. Def.'s Mot., Ex. 18 at 14. Ms. Jeffers never complied. *Id.,* Ex. 20.

By February 1999, Ms. Vocke "had noted a number of concerns with Ms. Jeffers' performance" and had advised her of these concerns in conversations and e-mail messages. *Id.* ¶ 31. Over the next several months, Ms. Vocke continued to find Ms. Jeffers' performance deficient. *Id.* ¶ 32; Def.'s Mot., Ex. 23 at 17–39. Thus, on July 13, 1999, Ms. Vocke placed Ms. Jeffers on a Performance Improvement Plan ("PIP"). Def.'s Mot., Ex. 23 at 1–5. The PIP stated that Ms. Jeffers was "experiencing problems in performing [her] duties" and aimed to improv[e her] performance "to the 'successful' level." *Id.* at 1. Initially scheduled to last ninety days, Ms. Vocke extended the PIP another six weeks. Vocke Aff. ¶ 33.

Although the PIP directed Ms. Jeffers to schedule bi-weekly meetings with Ms. Vocke to monitor her progress, by August 19, 1999, Ms. Jeffers had failed to schedule a single meeting. Def.'s Mot., Ex. 24. The two finally met only five times. Vocke Aff. ¶ 33. Throughout these meetings, Ms. Jeffers refused "to respond to or comment on anything" related to the PIP. Def.'s Mot., Ex. 25 at 2. Often, Ms. Vocke found her behavior "disrespectful and insolent." *Id.* Despite a perceived lack of progress, the PIP terminated November 30, 1999. Vocke Aff. ¶ 33. Both parties felt frustrated and dissatisfied. *Id.* ¶¶ 33–35; 11.15.99 Jeffers Aff. at 5–10.

Two months into the PIP, on September 10, 1999, Ms. Vocke issued Ms. Jeffers a notice of proposed suspension from pay and duty for seven days because of "insolent behavior and disrespectful conduct." Def.'s Mot., Ex. 25 at 1. Ms. Jeffers opposed the proposal. 11.15.99 Jeffers Aff. at

10–11. On January 3, 2000, the Medicaid Bureau issued Ms. Jeffers an official reprimand instead of the proposed suspension. Def.'s Mot., Ex. 29 at 1. Although the deciding official concluded that the evidence substantiated Ms. Vocke's charge of misbehavior, she mitigated the penalty, in part, because of Ms. Jeffers' tenure with the agency and previous record of service. *Id.* at 2.

Finally, on March 21, 2000, Ms. Vocke gave Ms. Jeffers a performance rating of "unacceptable" for the appraisal period November 4, 1999 through November 30, 1999. Def.'s Mot., Exs. 30–31.

Ms. Jeffers initiated this action on October 28, 2002, by filing a three-count complaint alleging: racial, gender, and race-and-gender discrimination in violation of Title VII (Count I); age discrimination in violation of the ADEA (Count II); and retaliatory discrimination in violation of both Title VII and the ADEA (Count III).

### STANDARD OF REVIEW

When "matters outside the pleadings are presented to and not excluded by the court, a motion . . . to dismiss for failure . . . to state a claim . . . shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R.Civ.P. 12(b). The parties, however, "shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* The requirement of "reasonable opportunity" means that all parties must be given "some indication by the court . . . that it is treating the [Rule] 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits and pursue reasonable discovery." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir.1985) (citations and internal quotation marks omitted). However, when a party is "aware that material outside the

pleadings is before the court," the party has notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment. *Id.; see also Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 261 (4th Cir.1998)(commenting that a court has no obligation "to notify parties of the obvious"). Still, notice is not enough. Before a Rule 12(b)(6) motion may be converted, the court must be satisfied that the nonmoving party "has ... had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(f)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 326 & n. 6, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Ms. Jeffers has had more than adequate notice that the motion of the INS might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. *See Laughlin,* 149 F.3d at 260–61. Moreover, Ms. Jeffers responded to the motion as if it might be treated as one for summary judgment and included her own affidavit and other exhibits. Ms. Jeffers has also had adequate opportunity for discovery. If she had thought that further discovery was necessary to adequately oppose summary judgment, Rule 56(f) obligated her to set out reasons for her need in an affidavit. *Celotex Corp.,* 477 U.S. at 326 & n. 6, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(f); *Laughlin,* 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56(f)). She has not done so. Therefore, the Court will consider the affidavits and additional materials submitted by the parties and will treat the motion of HHS as a motion for summary judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In considering a motion for summary judgment, "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Thus, "the judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must state evidence upon which a reasonable fact finder could rely, *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## ANALYSIS

### A. Statutory Bases and Modes of Proof

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42

U.S.C. § 2000e–2(a)(1). The ADEA prohibits employment discrimination on the basis of an employee's age, but limits its protection to individuals at least forty years old. 29 U.S.C. §§ 623(a)(1), 633a(a). Both statutes also prohibit an employer from retaliating against employees who assert their right to be free from perceived discrimination. 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d); *see also Ross v. Communications Satellite Corp.*, 759 F.2d 355, 357 n. 1 (4th Cir.1985)("An underlying discrimination charge need not be meritorious for a plaintiff to prevail on a claim of retaliation . . . .").

■ An aggrieved employee can prove a violation of either statute in two ways. First, the employee may present any direct or indirect evidence of the discriminatory animus at issue. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir.1999). To defeat a summary judgment motion, the employee must produce "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995). Absent such evidence, the employee must rely upon the flexible, burden-shifting scheme of circumstantial proof articulated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *Brinkley*, 180 F.3d at 607.

■■ *McDonnell Douglas* requires the plaintiff to establish a *prima facie* case of discriminatory action, giving rise to a presumption of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817; *Brinkley*, 180 F.3d at 607. The defendant must then articulate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp.*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Brinkley*, 180 F.3d at 607. If the defendant meets this less-than-ponderous burden of production, the presumption of discrimination disappears, and the plaintiff, who bears the ultimate burden of persuasion, must show that the proffered explanation is but a pretext for intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 258–59 (4th Cir.2001).

■ "An employer is entitled to summary judgment if the plaintiff fails to establish a *prima facie* case of discrimination" or fails to show that the employer's subsequently proffered reason for the challenged employment action is unworthy of credence. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir.1995); *see also Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. Even establishment of both a *prima facie* case and the falsity of the employer's explanation does not preclude summary judgment for the employer. *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097. "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's reason . . . is correct.'" *Id.* at 146–47, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If "no rational factfinder could conclude that the action was discriminatory," the plaintiff cannot withstand the employer's motion for summary judgment. *Id.* at 148, 120 S.Ct. 2097. Nevertheless, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false," may, without more, defeat the employer's motion. *Id.*

## B. *Failure–to–Promote Claims*

Ms. Jeffers claims that she was denied promotion to the announced GS–15 posi-

tions because of her race, her gender, her race-and-gender, or her age. The evidence reflects a unitary decisional process. The same intermediate selection panel simultaneously reviewed all the applications and created two short lists of "best qualified" applicants. Three applicants, including Ms. Jeffers, appeared on both lists. The same ultimate decision-maker interviewed all those "best qualified" and finally rejected Ms. Jeffers.

### 1. *Discrimination on the Basis of Race*

■ At the EEOC administrative hearing on March 9, 2000, Ms. Jeffers testified that she spoke to Mr. Cade about the positions around the time they were posted. Def.'s Mot., Ex. 8 at 29. When she expressed her interest, he allegedly responded: "[Y]ou have to appreciate my position. I can't come here in an acting position and start promoting a lot of blacks to super grades." *Id.* His response discloses a racial animus (albeit, perhaps, not his own) directly linked to the contested promotion decision(s). More direct evidence that the decision-maker "placed substantial negative reliance on an illegitimate criterion" rarely exists. *Fuller,* 67 F.3d at 1142 (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)(O'Connor, J., concurring))(internal quotation marks omitted). At this stage of the proceedings, the testimony of Ms. Jeffers must be accepted as true. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Accordingly, resort to the *McDonnell Douglas* scheme of proof is unnecessary. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1984)("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). Ms. Jeffers has adduced sufficient direct evidence of intentional racial discrimination to preclude summary judgment for HHS.

### 2. *Discrimination on the Basis of Gender, Race–and–Gender, and Age*

■ No direct or indirect evidence of any other discriminatory intent supports Ms. Jeffers' remaining failure-to-promote claims. Their proof, therefore, depends on the *McDonnell Douglas* paradigm. To establish a *prima facie* case of discriminatory failure-to-promote, Ms. Jeffers must prove: (1) that she belongs to a protected group (or groups); (2) that she applied for the positions in question; (3) that she was qualified for the positions; and (4) that she was rejected for the positions under circumstances giving rise to an inference of unlawful discrimination. *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994). To satisfy the fourth element, she need only show that HHS filled the positions with individuals outside her protected class(es) - or, for her age discrimination claim, individuals "substantially younger." *See id.; O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312–13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The burden of establishing a *prima facie* case is not onerous. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 960 (4th Cir. 1996).

HHS concedes that Ms. Jeffers has satisfied the second and third elements. With respect to the first element, it concedes too that she belongs to two distinct, protected classes: the class of females and the class of persons forty years of age and older. Yet Ms. Jeffers also claims membership in - and clearly belongs to - a third, composite class: the class of African-American females. And HHS contends that Title VII affords no discrete protection to such a class.

It grounds its argument in the "clear language" of the statutory text and in

"common sense." Def.'s Reply at 2–3. Title VII, HHS points out, proscribes employment discrimination based upon "race, color, religion, sex, *or* national origin." 42 U.S.C. § 2000e–2(a)(1)(emphasis added). Because the text poses classes "in the alternative," HHS concludes, classes cannot be defined by combination of the named classes. Def.'s Reply at 3.

Some characteristics, such as race, color, and national origin, often fuse inextricably. Made flesh in a person, they indivisibly intermingle. The meaning of the statute is plain and unambiguous. Title VII prohibits employment discrimination based on any of the named characteristics, whether individually or in combination. *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir.1994)("[W]here two bases for discrimination exist, they cannot be neatly reduced to distinct components."); *Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir.1980)("[D]iscrimination against black females can exist even in the absence of discrimination against black men or white women. . . . The use of the word 'or' evidences Congress' intent to prohibit employment discrimination based on any or all of the listed characteristics."); *see also Olmstead v. L.C.*, 527 U.S. 581, 598 n. 10, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999)(citing *Jefferies* with approval); *cf. Lewis v. Bloomsburg Mills, Inc.*, 773 F.2d 561, 564–66 (4th Cir.1985) (upholding district court's refusal to redefine a certified class of African–American women to include African–American men, when the evidence demonstrated that the employer discriminated against African–American women to a greater degree than it discriminated against African–American men, and recognizing the class of African–American women as "special victims" of a more general racial animus). Discrimination against African–American women necessarily combines (even if it cannot be dichotomized into) discrimination against African–Americans and discrimination against women—neither of which Title VII permits.

Common sense, moreover, corroborates the clear language of Title VII. An "attempt to bisect a person's identity at the intersection of race and gender often distorts or ignores the particular nature of [his or her] experiences." *Lam,* 40 F.3d at 1562; *see also* Peggie R. Smith, *Separate Identities: Black Women, Work, and Title VII,* 14 Harv. Women's L.J. 21 (1991) (emphasizing the need to examine African–American women's claims of "interactive" race-and-gender discrimination within a socio-historical framework). Like other composite classes under Title VII, African–American women are subject to stereotypes and assumptions shared neither by African–American males nor by Caucasian females. Consequently, they may suffer a distinct, but no less invidious, discrimination. *See Jefferies,* 615 F.2d at 1032; *Lam,* 40 F.3d at 1562 (discussing Asian women).

Of course, as HHS observes, recognition of a distinct class of African–American females (or any composite class) makes establishment of a *prima facie* case of discrimination easier. The more specific the composite class, the more readily a plaintiff can demonstrate that the beneficiary of the contested employment decision does not belong to the class. A *prima facie* case is not supposed to be difficult to establish. *Tex. Dep't of Cmty. Affairs,* 450 U.S. at 253, 101 S.Ct. 1089. Its establishment, moreover, merely obliges the employer to *produce* (not to prove) some legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp.,* 411 U.S. at 802–03, 93 S.Ct. 1817. The ultimate burden of persuasion remains always on the plaintiff. *Reeves,* 530 U.S. at 143,

120 S.Ct. 2097. And the more specific the composite class in which the plaintiff claims membership, the more onerous that ultimate burden becomes.

■ Accordingly, to apply Title VII as written when a plaintiff claims race-and-gender bias, the court must determine "whether the employer discriminates on the basis of that *combination* of factors, not just whether it discriminates against people of the same race or the same sex." *Lam,* 40 F.3d at 1562. Relevant—though not dispositive—evidence of such a claim includes evidence of discrimination against African–Americans (regardless of gender) and evidence of discrimination against females (regardless of race). *See Lewis,* 773 F.2d at 565; *Daniel v. Church's Chicken,* 942 F.Supp. 533, 539 (S.D.Ala.1996).

■ Here, HHS promoted a 44–year–old Caucasian male and a 50–year–old Caucasian female instead of Ms. Jeffers. Because one of the applicants selected was a woman, and because no other evidence of pure gender discrimination has been adduced, Ms. Jeffers has failed to establish a *prima facie* case of pure gender discrimination. *Etefia v. E. Balt. Cmty. Corp.,* 2 F.Supp.2d 751, 764 (D.Md.1998)(finding that male plaintiff failed to satisfy the fourth element of a *prima facie* case of failure-to-promote on the basis of gender when one of the positions he sought went to a man and the other remained unfilled). She has, however, established a *prima facie* case of composite, race-and-gender discrimination because HHS did not promote an African–American woman.

■ HHS has offered a legitimate, non-discriminatory explanation for its promotion decision: the superior qualifications of the employees selected. *See Evans,* 80 F.3d at 960 (recognizing job performance and superior qualifications

"as valid, non-discriminatory bases for any adverse employment decision"). Mr. Cade, in particular, has testified that four reasons especially motivated his decision: (1) Mr. Fenton and Ms. Duckett had demonstrated stronger management skills than Ms. Jeffers; (2) they had consistently provided him timely work products of high quality, whereas Ms. Jeffers had not; (3) they submitted stronger promotion applications than Ms. Jeffers; and (4) they performed better in the promotion interview than Ms. Jeffers. Cade Decl. ¶ 4. The former two reasons derive from Mr. Cade's experience as the immediate supervisor of all three employees. Cade Dep. at 13, 36, 58–59. The latter two emerge from the promotion process itself.

■ Although Mr. Cade's explanation suffices to eliminate the presumption of race-and-gender discrimination, Ms. Jeffers' proof of his racial discrimination, *see supra* part B.1, renders the explanation an insufficient basis for summary judgment. If HHS actually rejected Ms. Jeffers because of her race, Mr. Cade's fourfold rationale cannot be true. Still, "[i]t is not enough ... to *dis*believe the employer; the factfinder must [also] *believe* the plaintiff's explanation of intentional discrimination." *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 519, 113 S.Ct. 2742)(internal quotation marks omitted). Thus, "if the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent." *Fisher v. Vassar Coll.,* 114 F.3d 1332, 1338 (2d Cir.1997), *quoted with approval in Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. Similarly, if evidence shows that the employer concocted its explanation to conceal *racial* discrimination, no

inference of any *other* illegal discrimination necessarily arises.

In further support of her claim of race-and-gender discrimination, Ms. Jeffers points again to the alleged, contemporaneous statement of Mr. Cade that he was not going to "start promoting a lot of blacks to super grades." Def.'s Mot., Ex. 8 at 29. She points also to the promotion and employment record of the Medicaid Bureau in general and Mr. Cade in particular. Of the five employees that Mr. Cade promoted to GS–15 positions during his tenure as acting director, not one was an African-American. Cade Decl. ¶ 6. Further, from October 1994 through December 1996, not a single African–American was promoted to a GS–15 position. Def.'s Mot., Ex. 2 at 18.

The alleged statement of Mr. Cade certainly discloses a bias against African–Americans—a bias, however, that would harm African–American women no more (and no less) than African–American men. It reveals no bias against African–American women in particular, nor any bias against women in general.

With respect to the promotion and employment record: in March 1997, the Medicaid Bureau employed eleven GS–15s—eight men and three women, *all* Caucasian. Def.'s Mot., Ex. 2 at 18. It employed nineteen GS–14s—seventeen Caucasians and two African–Americans. *Id.* Thirteen of the Caucasians were male; both African–Americans, including Ms. Jeffers, were female. *Id.* Prior to the promotions at issue, between October 1994 and December 1996, HHS promoted only one employee, a Caucasian female, to a GS–15 position. *Id.* During the same period, it promoted only one other employee, an African–American female, to a GS–14 position. *Id.* This sparse statistical evidence discloses no special bias against African–American women. From the totality of the evidence, no rational factfinder could conclude that HHS failed to promote Ms. Jeffers because of the combination of her race-and-gender.

 At forty-four, Mr. Fenton was substantially younger than the 55–year-old Ms. Jeffers. *See Tolley v. Health Care & Retirement Corp.,* No. 96–2094, 1998 WL 24972, at *3 (4th Cir. Jan.21, 1998)(finding a 42–year-old substantially younger than a 51–year-old). Ms. Duckett, at fifty, probably was not. *See Cramer v. Intelidata Techs. Corp.,* No. 97–2775, 1998 WL 911735, at *3 (4th Cir. Dec.31, 1998)(finding a difference of five years insignificant). Nevertheless, the point that distinguishes substantially from insubstantially younger likely cannot be fixed. Moreover, Ms. Jeffers was apparently the oldest of all the "best qualified" applicants, and the ultimate decision-maker, Mr. Cade, was younger. Ms. Jeffers has established a *prima facie* case of age discrimination.

Other than this minimal *prima facie* case, however, and Mr. Cade's racially discriminatory remark, she adduces no further evidence of age animus. Thus, no rational factfinder could conclude that HHS failed to promote Ms. Jeffers because of her age.

## C. *Retaliation Claim*

 Ms. Jeffers also claims that HHS retaliated against her because she filed a discrimination complaint about her non-selection for the GS–15 positions. She has produced no evidence of retaliatory intent. Therefore, the familiar *McDonnell Douglas* paradigm dictates her proof. To establish a *prima facie* case of retaliation, she must show: (1) that she engaged in a protected activity; (2) that HHS took adverse employment action against her; and (3) that a causal connection existed between the protected activity and the ad-

verse action. *Causey v. Balog,* 162 F.3d 795, 803 (4th Cir.1998). HHS does not dispute that Ms. Jeffers has satisfied the first element. It contends, however, that she cannot demonstrate the second.

An employer's conduct must materially alter the terms, conditions, or benefits of employment to qualify as an adverse employment action. *Von Gunten v. Maryland,* 243 F.3d 858, 866 (4th Cir. 2001). Inquiry into the adverse nature of an employer's action typically focuses on whether the employee has suffered discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion. *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir.1999). Although something less than an "ultimate employment decision" may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy. *See Settle v. Baltimore County,* 34 F.Supp.2d 969, 989 (D.Md.1999), *aff'd mem.,* 203 F.3d 822 (4th Cir.2000).

Ms. Jeffers advances six discrete employment actions that she argues are legally adverse: placing her on AWOL status when she worked at home on her discrimination complaint; requiring her to sign in and out every day; placing her on a PIP; proposing to suspend her from pay and duty for seven days; issuing her a reprimand in lieu of the proposed suspension; and rating her performance "unacceptable."

Although placement on AWOL status denies an employee compensation, the record shows—and Ms. Jeffers concedes, Pl.'s Opp'n at 19—that she was never so placed. Vocke Aff. ¶ 20; Def.'s Mot., Ex. 16. She received full pay for the day in question. Def.'s Mot., Ex. 16. Because Ms. Jeffers has not demonstrated that she suffered any negative consequences from the unimplemented AWOL charge, it does not constitute an adverse employment action. *Spriggs v. Pub. Serv. Comm'n,* 197 F.Supp.2d 388, 397 (D.Md. 2002).

Ms. Vocke has testified that she saw Ms. Jeffers reporting to work late and leaving early on several occasions. Vocke Aff. ¶¶ 22–23. Ms. Jeffers does not deny this testimony. Thus, if Ms. Jeffers was working fewer hours than her job demanded, the requirement to sign in and out cannot have altered the terms and conditions of her employment. On the contrary, it represents an attempt to hold her to terms and conditions already agreed upon. Moreover, the Medicaid Bureau required other GS–14 (and GS–15) employees to sign in and out as well. *Id.* ¶ 26. The "terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies." *Von Gunten,* 243 F.3d at 869. Regardless, Ms. Jeffers never acceded to the demand to sign in and out. Def.'s Mot., Ex. 20. And HHS took no further action.

Ms. Jeffers labored under the PIP for four-and-a-half months. During its course, she met with Ms. Vocke on five occasions to review her accomplishments and progress. Vocke Aff. ¶ 33. At its conclusion, Ms. Vocke still deemed her performance "unacceptable." Def.'s Mot., Ex. 30. Nevertheless, HHS pursued the PIP no further. No tangible consequences resulted. The PIP simply does not amount to a redressable adverse employment action. *Cottman v. Rubin,* No. Civ. L–98–4067, 2001 WL 257830, at *3 (D.Md. Feb.15, 2001)(concluding that decision by U.S. Customs Service to place employee on a PIP was not an adverse employment action), *aff'd,* 35 Fed.Appx. 53 (4th Cir. 2002).

A suspension from pay and duty clearly amounts to an actionable employment action. *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 190 (4th Cir.2001). Just as clearly, a proposed suspension that is never carried out does not. *See Howze v. Va. Polytechnic,* 901 F.Supp. 1091, 1096–97 (W.D.Va.1995)(holding that professor had not suffered an adverse employment action when an intermediate committee denied her tenure, but the ultimate review committee granted it); *see also* 29 C.F.R. § 1614.107(a)(5) (requiring agency dismissal of complaints that allege "that a proposal to take a personnel action, or other preliminary step to taking a personnel action, is discriminatory").

A reprimand, whether oral or written, does not *per se* significantly affect the terms or conditions of employment. *Lewis v. Forest Pharms., Inc.,* 217 F.Supp.2d 638, 648 (D.Md.2002). However, "if evidence shows that a reprimand not only bruises an employee's ego or reputation, but also works a real, rather than speculative, employment injury, the reprimand becomes [an adverse] employment action." *Id.* The formal, written reprimand that HHS issued Ms. Jeffers, by its own terms and by operation of HHS policy, remained in her official personnel file for two years. Def.'s Mot., Ex. 27, Ex. 29 at 3. It has since been removed. *See* Johnson Decl. ¶ 6. The reprimand has been purged from her employment record, and, while there, it worked no tangible harm: thus, it does not qualify as an adverse employment action. *See Hopkins v. Balt. Gas & Elec. Co.,* 77 F.3d 745, 755 (4th Cir.1996)(affirming that formal disciplinary letter subsequently removed from an employee's personnel file is not an adverse action).

Like a reprimand, a poor performance rating does not in itself constitute an adverse employment action. *Spears v.* *Mo. Dep't of Corrs. & Human Res.,* 210 F.3d 850, 854 (8th Cir.2000). "Rather, it is a mediate step, which, if relied upon for a true adverse employment action (e.g., discharge, demotion, etc.) becomes relevant evidence." *Settle,* 34 F.Supp.2d at 1010. HHS never used Ms. Jeffers' "unacceptable" performance rating to her detriment. Moreover, like the reprimand she received, the negative evaluation remained in her official personnel file only two years; the file now contains no record of it. Def.'s Mot., Ex. 27; Johnson Decl. ¶ 7. Accordingly, Ms. Jeffers' performance rating does not rise to the level of an adverse employment action.

Finally, Ms. Jeffers asserts that HHS subjected her to retaliatory harassment creating a hostile work environment. Retaliatory harassment can constitute adverse employment action, but only if the alleged conduct was so severe or pervasive that it altered the term, conditions, or benefits of employment. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Von Gunten,* 243 F.3d at 869–70. The plaintiff must show that the workplace was both subjectively and objectively hostile. *Harris,* 510 U.S. at 21, 114 S.Ct. 367; *Von Gunten,* 243 F.3d at 870. There can be little doubt that Ms. Jeffers subjectively perceived her work environment at the Medicaid Bureau to be abusive.

To determine whether the workplace was objectively hostile, a court must look at all the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or merely offensive; and the degree to which it unreasonably interfered with the em-

ployee's work performance.[4] *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir.2000). The standard for proving a hostile work environment is intended to be very high. *See Porter v. Nat'l Con–Serv, Inc.*, 51 F.Supp.2d 656, 659 (D.Md.1998), *aff'd*, 173 F.3d 425 (4th Cir.1999).

Ms. Jeffers' allegations fall short of this standard. Even if it is assumed *arguendo* that the conduct Ms. Jeffers complains of was sufficiently frequent, other hallmarks of an objectively hostile work environment are lacking. A reasonable person would not find the totality of the conduct strikingly severe. At no time was Ms. Jeffers physically threatened, nor was she ever humiliated. Though Ms. Vocke criticized her performance, Ms. Jeffers insists that she has always discharged the duties of her employment with utmost competence. 11.15.99 Jeffers Aff. at 4–11. The environment in which Ms. Jeffers worked may have been, at times, unpleasant; as a matter of law, it was not hostile. Accordingly, HHS is entitled to summary judgment on her claim of retaliation.

### CONCLUSION

For the foregoing reasons, a separate order will be issued: DENYING HHS's motion for summary judgment as to Count I, with respect to Ms. Jeffers' claim of racial discrimination; GRANTING HHS's motion for summary judgment as to Count I, with respect to Ms. Jeffers' claims of gender discrimination and race-and-gender discrimination; and GRANTING HHS's motion for summary judgment, and entering judgment in its favor, as to Counts II and III.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 8th day of May 2003, hereby ORDERED and ADJUDGED:

1. That the defendant's motion for summary judgment BE, and it hereby IS, DENIED IN PART as to Count I of the plaintiff's complaint, with respect to the claim of racial discrimination;

2. That the defendant's motion for summary judgment BE, and it hereby IS, GRANTED IN PART as to Count I of the plaintiff's complaint, with respect to the claims of gender discrimination and race-and-gender discrimination;

3. That the defendant's motion for summary judgment BE, and it hereby IS, GRANTED as to Counts II and III of the plaintiff's complaint;

4. That JUDGMENT BE, and it hereby IS, ENTERED as to Counts II and III of the plaintiff's complaint in favor of the defendant and against the plaintiff; and

5. That the Clerk of the Court send copies of this Order and the Memorandum Opinion to counsel for the parties.

---

**4.** Although courts routinely state this four-part litany, it represents no more than an expansion of the "sever[ity]" and "pervasive[ness]" of *Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). "Frequency" substitutes synonymously for "pervasiveness," while "threat/humiliation" and "interference with performance" dissect "severity" into its manifestations.