**COMMONWEALTH of Kentucky, Education Cabinet, Office of Career and Technical Education; Kentucky Technical Education Personnel Board Appellants,**

v.

**Donna P. SOLLY Appellee.**

No. 2006–SC–000858–DG.

Supreme Court of Kentucky.

May 22, 2008.

---

Tamela Biggs, Cabinet for Workforce Development, Frankfort, KY, Counsel for

Appellant, Commonwealth of Kentucky, Education Cabinet, Office of Career and Technical Education.

Eugene Jeffrey Mosley, Education Cabinet, Office of Legal Services, Frankfort, KY, Counsel for Appellant, Kentucky Technical Education Personnel Board.

Donald Duff, Frankfort, KY, Counsel for Appellee, Donna P. Solly.

Opinion of the Court by Justice NOBLE.

This case arises from an administrative appeal taken by Appellee, Donna Solly, against the Commonwealth of Kentucky Education Cabinet, formerly known as the Cabinet for Workforce Development, and the Kentucky Technical Education Personnel Board. Appellee was employed as a limited-status teacher at Caldwell Area Technology Center. Her employment was not renewed on August 22, 2002 after she was given notice in a non-renewal letter dated August 8, 2002. She alleges that her non-renewal was due to discrimination on the basis of sex. Because Appellee has not established that she was similarly situated to a male employee with whom she had previously had an affair, and because the reasons stated for her non-renewal are sufficiently non-discriminatory in any event, the Court of Appeals is reversed.

## I. Background

Prior to completing her fourth year as a limited-status employee, Appellee engaged in an extra-marital affair with a co-worker at the school, Mickey Bayer. Both were married at the time. The affair had ended by January 2001, but complaints about the behavior were brought to the attention of the school principal, Arthur Dunn. Mr. Dunn required the Appellee to listen to the complaints in person, which included a demand that Appellee stay away from the complainant's son, and a berating about the affair Appellee had had with Bayer. After requiring her to listen, Dunn told Appellee to stay away from the woman's son. Dunn was curt and critical of Appellee thereafter, and at the end of the school year he recommended that she not be renewed. No action was taken against Bayer, who, unlike Appellee, was a continuing status employee. In his recommendation, Dunn stated no reasons for the non-renewal, believing none were required due to Appellee's status as a limited employee. Appellee was informed in writing that she was not being renewed.

Appellee filed an appeal with the Personnel Board of the Personnel Cabinet alleging discrimination. She followed this up with phone calls wherein she alleged she was being fired for having an affair with another teacher. Willie Lile, Executive Director of the Office of Quality and Human Resources of the Workforce Development Cabinet, investigated the appeal, and requested that Dunn give an explanation for the termination. While claiming he had a large file on Appellee, he provided no specific information, and in view of Appellee's good attendance and teaching record, Lile recommended that the Department enter into an agreement to reinstate Appellee. Lile told Appellee she was returning to work with a clean slate.

Dunn and Appellee had a few other disagreements thereafter that Lile resolved. Appellee was told to report back to work on July 29, 2002. She did not appear, but had her sister call to say that she would be at work the next day. When Appellee got to work the next day, she sent Dunn a note saying that her absence had been unavoidable, giving no explanation but offering to answer any questions. On August 1, Dunn sent a letter to the Cabinet Commissioner, Emil Jezik, saying that Appellee was "once again" in the court news of the local paper for an alcohol or drug charge. He also

stated that she had been in jail on Monday, July 29, which was the reason for her absence from work. He told the Commissioner that he was receiving lots of questions from the community; that two senior English teachers voiced concern about not being able to get "this situation" under control; and that the school was going to receive "undue negative publicity." He ended by telling the Commissioner that he needed directions on what to do since students were returning on Friday, and that "word travels quickly in small communities like ours." The newspaper article enclosed with the letter stated that Appellee entered a guilty plea to operating a motor vehicle under the influence of drugs or alcohol, and possession of an open alcohol beverage container. She was fined $250.00, ordered to pay a service fee and costs, ordered to attend an alcohol and drug education program, and sentenced to two days in the county jail, one day served and the other to comprise eight hours of community service. Her license was suspended for ninety days.

Dunn met with Appellee on August 1, the same day he wrote the Commissioner. Appellee had another teacher present as a witness. She told Dunn she had been drinking on weekends because of stress from a fire that had destroyed her house and because of her divorce from her abusive husband. She alleged it was he who had reported her drinking to the police, who had arrested her after she drove into a field across the road from her house. She asked Dunn for pity and not to fire her.

On August 8, Dunn received an anonymous letter criticizing him for "allowing affairs to go on under [his] nose" and "allowing [his] teacher who gets assault charges that happened some time ago, a DUI" to continue teaching. The letter ended by asking, "What are you, as superintendent, going to allow to happen next?" Dunn forwarded this letter to the Commissioner.

Based on these new developments, Commissioner Jezik determined that Appellee's behavior would raise questions in the minds of teachers, parents, and students, and was concerned that she had a problem with alcohol that would affect her ability to be a good teacher. He sent Appellee a letter dated August 8, 2002, again telling her she would not be renewed, and giving no reasons because of her limited-status employment.

Again, Appellee appealed her non-renewal, alleging that she was being terminated on the basis of sex discrimination. The hearing officer determined that she did not state a prima facie case of discrimination and that the reasons given for the nonrenewal were not pretextual. The Board agreed, as did the Franklin Circuit Court on appeal from the Board. The Court of Appeals, disagreeing with the findings of the three lower tribunals, reversed and determined that Appellee had made a prima facie case of discrimination, and that the stated reasons were not sufficient. This Court granted discretionary review.

## II. Analysis

Pursuant to KRS 151B.070 (1) and (2), Appellee was a limited status employee because, while she had completed her one-year probationary period, she had not completed the additional three years required to attain continuing status, often referred to as "tenure." Such employees may be dismissed without cause before their annual anniversary date.

The significant difference between the two statuses is that under Kentucky law, a continuing status employee can only be terminated for cause, while no reasons are required to non-renew a limited status em-

ployee, effectively making them terminable at will. This is longstanding policy, founded on the presumption that the protections granted to public employees should not be given to teachers until it is determined that they will be good teachers. The legislature has had countless opportunities to change this approach, but has opted not to do so. Thus it can only be inferred that the legislature believes it is in the best public interest to leave limited status employees terminable at will until they "vest" by completing their fourth year of employment and attaining continuing status. Thus limited status employees are subject to "reemployment on an annual basis." This aids schools in particular in judging who should be interacting with our children.

■■■ At-will employment in general allows employees to be terminated for any reason not prohibited by law: "[A]n employer may discharge an at-will employee for good cause, for no cause, or for a cause that some might view as morally reprehensible." *Wymer v. JH Properties, Inc.,* 50 S.W.3d 195, 198 (Ky.2001). However, public teachers also have the protection of KRS 151B.055(10), which states that *any* certified, equivalent, or unclassified employee may appeal an action if it is based on sex discrimination (as well as other protected areas). Thus while Appellee clearly could be dismissed without cause, that is true only if the cause is not discriminatory or otherwise illegal. It is also longstanding policy under Kentucky law that employment decisions must not be based on discriminatory reasons. This creates a certain strain among the statutes dealing with teacher employment, and makes it appear that what is given with one hand is taken away with the other. Where discrimination claims are made in employment issues, this is certainly true.

■■■ In cases of employment discrimination where there is no direct evidence of discrimination, the person claiming discrimination must make a prima facie showing that there has been discriminatory action toward her. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Jefferson County v. Zaring,* 91 S.W.3d 583, 590 (Ky. 2002) (applying *McDonnell Douglas* to state civil rights claims); *Williams v. Wal-Mart Stores, Inc.,* 184 S.W.3d 492, 495 (Ky.2005) (same). To do this on a claim of sex discrimination, an employee must show that she is a member of the protected class, that she was subject to an adverse employment action, that she was qualified for the position, and that a similarly situated male was treated more favorably. *Young v. Hammond,* 139 S.W.3d 895, 903–04 (Ky.2004); *Tiller v. University of Kentucky,* 55 S.W.3d 846, 849 (Ky.App.2001); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995). If such a showing is made, the burden shifts to the employer to establish legitimate nondiscriminatory reasons for the employment action, which may then be countered by the employee showing that the reasons are a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1824–26.

■■■ Appellee cannot make a prima facie showing of discrimination under the facts of this case. The male whom she claims received more favorable treatment than her is her former lover, Mickey Bayer. While both of them are equally culpable for their improper relationship, have similar jobs and work under the same supervisor, there are significant differences in their situations other than gender. Specifically, Appellee's position differed from Bayer's in that she could be non-renewed without reasons and he could not be terminated without cause due to his

continuing status employment. She could have been non-renewed simply because the process was easier with her, rather than because she was the female. The Court of Appeals held that this difference was not enough "because disparate treatment regarding the affair would not be justified simply because one employee could be dismissed without cause and one employee could only be dismissed for cause." This reasoning fails, however, because it expressly ignores the requirement that the employees be similarly situated. As the Sixth Circuit has noted,

> "In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment . . ., the plaintiff must prove that all of the relevant aspects of [her] employment situation are 'nearly identical' to those of the [male] employees who [she] alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."

*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994) (quoting *Ruth v. Children's Medical Center*, 940 F.2d 662 (Table), 1991 WL 151158, at * 6 (6th Cir. Aug.8, 1991)).

■ Being similarly situated also requires that the employees "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). The Court of Appeals opinion mistakenly relies on the affair as the sole reason for Appellee's non-renewal, where the ultimate reason was Appellee's criminal act, prosecution, and conviction. But what happened to her due to her own individual behavior is what creates a difference in situation between her and Bay-er. Nothing in the record shows that Bayer participated in criminal drinking and driving behavior, nor did he miss work because he was in jail for a DUI. He had no violations of the law, and did not bring ill repute on the school by appearing in the crime section of the local newspaper. The public nature of her criminal behavior was a great deal more likely to impact her ability to adequately perform her job than their private affair, despite there being some knowledge of others about that. Thus, it is clear that Appellee and Bayer were not similarly situated, and as a result Appellee cannot make a prima facie case of discrimination.

■ Furthermore, Appellee's criminal behavior and conviction show that even if she had been able to make the prima facie case in regard to the second non-renewal, the DUI would certainly provide a non-discriminatory reason for her dismissal. This satisfies the second step of *McDonnell Douglas*. The Court of Appeals held otherwise, claiming that the dismissal was for the affair and that dismissal for the DUI would have been improper based on a detailed reading of KRS Chapter 151B's requirements for teacher dismissal. As noted above, the evidence does not show that the affair was the primary motivation for the dismissal. And even if it were, it is not an inherently discriminatory reason, since it does reflect in some degree on conduct unbecoming a teacher. The fact that Bayer was not dismissed does not make the affair a discriminatory reason, since he was protected by tenure and presumably the affair would not be sufficient to show cause. Also, even if Appellee's dismissal violated KRS Chapter 151B and its restrictions applied to her, as the Court of Appeals held, that does not make the Education Cabinet's reason for the dismissal discriminatory. Assuming the Court of Appeals' reading of KRS Chapter

151B is correct, it would provide grounds at most for a claim of wrongful termination, not for discrimination. Even though she and the male co-worker were not similarly situated in regard to the second non-renewal, the foregoing facts would certainly provide adequate non-pretextual reasons to avoid a charge of sex discrimination.

 As long as the decision of an administrative tribunal is not arbitrary, because there is not substantial evidence to support it, and it has not misapplied the law, a reviewing court is bound to uphold the administrative decision. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450 (Ky.1964); *Kentucky Retirement Systems v. Heavrin,* 172 S.W.3d 808 (Ky.App.2005). The Court of Appeals did not consider all the substantial evidence that was considered by the hearing officer, the Board, and Franklin Circuit Court. "The fact that a reviewing court may not have come to the same conclusion regarding the same findings of fact does not warrant substitution of a court's discretion for that of an administrative agency." *Kentucky Unemployment Ins. Comm'n v. Landmark Community Newspapers of Kentucky, Inc.,* 91 S.W.3d 575 (Ky.2002). In doing so, the Court of Appeals erred.

### III. Conclusion

For the forgoing reasons, the Court of Appeals is reversed, and the ruling of the Franklin Circuit Court is reinstated.

LAMBERT, C.J.; ABRAMSON, CUNNINGHAM, MINTON and SCOTT, JJ., concur.

SCHRODER, J., not sitting.