NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0259n.06

No. 14-6322

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Apr 09, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| SHIRLEY P. RILEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Eastern District |
| | ) | of Kentucky |
| PNC BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____/ | | |

Before:  GUY, COOK, and McKEAGUE, Circuit Judges.

**RALPH B. GUY, JR. Circuit Judge.**      Plaintiff Shirley P. Riley sued PNC Bank, N.A., alleging that her employment was terminated because of her age and gender in violation of the Age Discrimination in Employment Act (ADEA), Title VII, and the Kentucky Civil Rights Act (KCRA).  Plaintiff appeals from the entry of summary judgment in favor of PNC Bank with respect to these claims, arguing that a genuine issue of material fact existed on the question of whether the defendant's proffered reasons were pretext for age or gender discrimination.  We find no error and affirm.

**I.**

Shirley Riley, age 54 at the time of her discharge, was the Branch Manager of PNC Bank's Richmond Road location from the time that PNC Bank acquired National City Bank on

December 31, 2008, until Riley's employment was terminated more than three years later on June 5, 2012. Riley was the branch manager of that location before the acquisition, and continued in that position after conversion to and consolidation with another PNC branch. Diane Richert, who was approximately four years younger than plaintiff, was a PNC manager at the time of the acquisition and became a Regional Manager and plaintiff's direct supervisor in the first part of 2009. PNC Bank also designated the Richmond Road Branch as a "driver branch," which plaintiff described to mean a larger branch that had an assistant branch manager, greater emphasis on business sales, and significantly higher sales and production goals.

Riley had been employed by PNC or its predecessor banks since 1977, and there was no indication that she had been subject to discipline at any time prior to 2011.[1] In February 2011, Richert conducted an evaluation of Riley's performance for the year 2010. That evaluation gave an overall rating of "Achieves," but added that the branch had not met several of its production goals. The review also indicated that the branch had been "rolling red on the CIQ behaviors," which meant that the monthly customer satisfaction survey results were not meeting expectations. Plaintiff agreed with the evaluation and had no concerns about Richert's supervision of her at that time. The evaluation also noted that, like other branch managers, Riley was required to become certified in the "PNC Conversation." Riley tried twice but did not pass the "coaching" portion of this in-house certification in either December 2011 or March 2012.[2]

Richert gave Riley two written warnings during 2011. First, in June 2011, Riley received

---

[1] Riley was hired by Second National Bank, which became Commerce National Bank, then National City Bank, and finally PNC Bank.

[2] This two-part certification involved being evaluated by a panel while role-playing a conversation with a customer about his or her banking needs (the PNC Conversation) and a coaching session with a subordinate about the PNC Conversation. An average score of 80% was required to pass. The panel gave Riley passing scores on the first part, but her average score on the coaching portion was just below 80% the first time and 77% the second time. Riley now argues that her average score of 79.6% the first time could be considered passing, but it was not.

a written warning and corrective action plan because the CIQ scores for the Richmond Road Branch continued to fall below expectations. Riley prepared an action plan to address the issues, but the CIQ scores continued to go up and down. Second, in December 2011, Riley received a written warning and corrective action plan because the branch failed to meet certain production goals and Riley had been failing to properly document her business sales calls or coaching of branch employees. Riley said she had been making the business sales calls and providing the coaching, but admitted that she had not been documenting either the sales calls or the coaching sessions as was required. Riley explained to Richert that she did not complete the documentation because she was too busy doing the work of her inexperienced (and younger) Assistant Branch Manager, Chelsea Bowman.

An annual performance evaluation for 2011 followed in early 2012. Riley's self-assessment acknowledged having struggled with the CIQ scores and rated herself as "Marginally Achieves." Riley indicated that she needed to "focus on getting back on track" with her business calls and coaching the assistant branch manager to lead in her absence. Richert gave Riley a negative rating of "Meets Some Expectations," and commented that Riley's calling and coaching efforts were less than expected; that the branch's CIQ scores had been red six out of twelve months; and that the branch had not met key goals for sales and production.

Richert contacted PNC's Employee Relations Information Center about Riley's performance on March 16, 2012. Richert discussed the matter with Human Resources Specialist Doug Cape (age 52) and, after consulting with Human Resources Business Partner Karen Hazelwood (age 58), it was agreed that Riley would be placed on probation. Richert's supervisor, Marketing Manager James Barber (age 60), who had previously expressed concern about the performance of Riley's branch, concurred in the decision to place Riley on probation.

Cape's notes reflect that this decision was made April 10, 2012, and that the corrective action and probation was delivered to Riley during a meeting with Richert and Cape on April 17, 2012. That corrective action plan stated that Riley was not conducting or documenting weekly coaching sessions with her assistant branch manager, had not completed six weekly cash flow conversations or faxed the cash-flow agenda letters for the business calls, and was not managing her team on behaviors tied to the customer satisfaction scores. It also indicated that Riley was not meeting expectations for business sales calls in driver branches. Riley conceded that she had not been documenting her business calls, even though it was required of all branch managers. Riley also admitted that she had not been documenting the coaching despite the previous corrective action.[3]

Six weeks later, Richert contacted Cape and reported that Riley's performance had not improved. They agreed that Riley's employment would be terminated, and both Hazelwood and Barber supported that decision. Riley was informed of the decision on June 5, 2012, and testified that the reasons given during the meeting with Richert and Cape were her failure to document business calls and coaching of employees. Richert and Cape did not recall what reasons were given. Riley was replaced by Jeremy Brooking, age 33, who had been the Branch Manager of PNC's downtown Lexington Tower Branch. Riley acknowledged that Brooking's branch, which was also a driver branch, had good customer satisfaction scores and increased sales and production while he was the Branch Manager.

Riley brought this action in June 2013, alleging discriminatory discharge in violation of

---

[3]Riley argues that the corrective action plan placing her on probation was misleading because it stated that no documented coaching session with Bowman had occurred as of March 16, 2012, when there was evidence that there was one documented coaching with Bowman on April 12, 2012. Riley also argues that there was a second documented coaching on April 27, 2012. However, to identify these two instances of documented coaching—both occurring after the probation decision had been made—does not make the statement that no documented coaching occurred as of March 16 untrue. Nor does it demonstrate that the recurring criticism of her failure to document coaching was without basis in fact.

federal and state law. Following discovery, PNC Bank moved for summary judgment with respect to all of Riley's claims. The district court granted the motion and entered summary judgment in favor of PNC Bank for the reasons stated in the order entered September 30, 2014. This timely appeal followed.

**II.**

The district court's decision granting summary judgment is reviewed *de novo*. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making this determination, we must "view the evidence and draw all reasonable inferences in favor of the non-moving party." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013). No genuine issue of fact exists when the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Riley alleged that she was discharged because of her age or gender in violation of the ADEA, Title VII, and the KCRA. *See* 29 U.S.C. § 623(a)(1) (age); 42 U.S.C. § 2000e-2(a)(1) (gender); KY. REV. STAT. ANN. § 344.040(1)(a) (age and gender). When, as here, there is no direct evidence of discriminatory motive, the plaintiff may prove disparate treatment claims using circumstantial evidence under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-05 (1973). *See Geiger*, 579 F.3d at 622 (ADEA); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (Title VII); *Commonwealth v. Solly*, 253 S.W.3d 537, 541 (Ky. 2008) (gender); *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495-96 (Ky. 2005) (age). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Then the burden of

production shifts to the employer to proffer a legitimate non-discriminatory reason for the adverse action. *Id.* Once this showing is made, the burden shifts back to the plaintiff to show the proffered reason was pretext for discrimination. *Id*. at 804; *see also Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).[4]

The district court found, and PNC Bank does not dispute, that Riley established a *prima facie* case of both age and gender discrimination. Specifically, (1) Riley, a 54-year-old female, was a member of the protected age and gender classes; (2) her discharge constituted an adverse employment action; (3) she was qualified for her position as a branch manager; and (4) she was replaced by a "substantially younger" male branch manager. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 335, 339-40 (6th Cir. 2003); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 662-63 (6th Cir. 2000). Riley, in turn, concedes that PNC Bank satisfied its burden to articulate a legitimate non-discriminatory reason for the discharge by presenting evidence that the decision was based on Riley's continued failure to meet performance expectations after receiving corrective action and being placed on probation. *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802 (6th Cir. 2007).

With this showing made, the burden shifts back to Riley to identify evidence from which a reasonable juror could conclude that the proffered reasons were merely pretext for unlawful discrimination. *Chen*, 580 F.3d at 400. A plaintiff generally demonstrates pretext by showing by a preponderance of the evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that [the proffered reasons] were insufficient to motivate the employer's action." *Id*.; *see also Manzer v. Diamond*

---

[4]Recognizing that the Kentucky courts have interpreted the KCRA's provisions consistent with federal anti-discrimination laws, the district court analyzed the state and federal claims simultaneously. *See Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 767 n.1 (6th Cir. 2004); *Williams*, 184 S.W.3d at 495. The parties do not argue that this was error.

*Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). The reasonableness of the employer's decision may be considered to the extent that it sheds light on whether the proffered reason was the actual motivation. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

The first type of showing "consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are 'factually false.'" *Manzer*, 29 F.3d at 1084 (citation omitted). Here, Riley understood that PNC expected branch managers (and especially driver branch managers), to make and document a minimum number of business sales calls per week. Riley said she sent the weekly business "pipeline" report, but acknowledged that she did not document the business sales calls on the PNC form or fax the agenda letters for those calls to Richert. Similarly, although Riley maintains that she was doing the coaching, there is no dispute that Riley knew she was expected to document the coaching and consistently failed to do so (except apparently on two occasions in April 2012). The need for this coaching was recognized in Riley's self-assessment in early 2012, and the specific expectation that Riley have weekly documented coaching of Bowman was identified in the corrective action plan placing her on probation in April 2012. Riley did not present evidence showing that the reasons given—her failure to document business calls and coaching—had no basis in fact.[5]

To show these reasons were insufficient to motivate the discharge will ordinarily involve evidence that non-protected employees "'were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of

---

[5]Riley argues that reliance on performance deficiencies other than the failure to document sales calls or coaching would represent shifting justifications that may call the credibility of those justifications into question. *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002). However, PNC has not offered new reasons over time to justify the adverse action. *See MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012) ("[P]roviding *additional* non-discriminatory reasons that do not conflict with the one stated at time of discharge does not constitute shifting justifications.").

the plaintiff.'"  *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 600 (6th Cir. 2001) (quoting *Manzer*, 29 F.3d at 1084).  Riley must demonstrate that she is similarly situated to the non-protected employee in all relevant respects.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998).  The comparable employees must have "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Id.* at 352.

Although Riley said she was told by other branch managers that they did not document all of their business calls, the only non-hearsay evidence to that effect was from Brandon Cress, a younger branch manager of a non-driver branch, who testified that he did not document *every* business call.  Cress explained that if he talked to ten business customers in a week, he would not list them all; but, he also said he did not tell Richert that he was leaving some out.  This is not sufficient to show that Cress's conduct was substantially the same as Riley's failure to document her business sales calls.  Riley also described being singled out and questioned by Richert about the specifics of her calls in front of other branch managers, but conceded that she did not know if other branch managers had provided the documentation that she had not.

With respect to the coaching, Riley claims there is a dispute whether other branch managers were required to document their coaching at all.  For support, Riley seizes on Richert's statement during her deposition indicating that she did not require branch managers to document coaching once they passed the coaching certification.  Although the context is not entirely clear, Richert said she did not ask other branch managers to document their coaching because once they became certified she "stopped getting that."  Richert attempted to clarify through an "errata sheet," explaining that her branch managers were expected to document their coaching but once

they were certified they did not have to send that documentation to her unless she asked for it. Whether seen as contradictory, however, this evidence does not create a question of fact with respect to pretext because Riley had not passed the coaching certification and had been asked to provide documentation of her coaching to Richert. Nor is there evidence that a similarly situated non-protected employee was either not required to document their coaching at all, or not expected to provide documentation of that coaching upon request.[6]

Arguing that the proffered reasons did not actually motivate the discharge, Riley contends that Richert was "out to get her" and orchestrated her performance failures in order to build a record that would support the decision to terminate her employment under the PNC management adage to "coach 'em up or coach 'em out." In particular, Riley asserts that Richert saddled her with an incompetent teller supervisor and an inexperienced assistant branch manager and then faulted Riley when she was too busy doing their jobs to document the business calls or coaching as required. There was evidence that the teller supervisor, Kim Thornton, was consistently unable to balance the branch; that Richert resisted taking disciplinary action (allegedly out of personal loyalty to Thornton's deceased grandmother); and that, after six months, Richert acquiesced, placed Thornton on probation, and then transferred her to a lower-volume branch. However, as Riley acknowledged in her deposition, Thornton was no longer working at the branch when Riley's failure to complete documentation became an issue. Instead, Riley clarified that the only incompetent person affecting her performance at the relevant time was Assistant Branch Manager Chelsea Bowman.

Riley complained to Richert that Bowman was inexperienced and did not know what to

---

[6]In fact, Cress, who had passed the coaching certification, testified that he did not document *every* coaching (not that his coaching did not have to be documented). Although Cress denied that Richert asked him to provide documentation of his coaching as a matter of course before or after he was certified, Cress also testified that Richert had asked him to send documentation of his coaching at times, which he did.

do or how to manage others, but acknowledged that it was not unusual for branch managers to have to train the employees who work for them. Riley testified that she coached Bowman daily, but did not document that coaching or pursue corrective action to address problems with Bowman's performance. Still, despite these problems, Bowman was meeting her sales goals. Finally, Riley speculates that Richert conveniently demoted Bowman right after firing Riley to relieve the younger male replacement of the burden of working with Bowman. The only evidence, however, was that Bowman posted for a financial sales consultant position in another branch.

Cress testified that he got the impression that Richert wanted to get rid of Riley from observing their interactions and Richert's body language. Cress said he thought Richert did not like Riley or other branch managers over 40, and believed it was "odd" that no new female managers had been hired. Riley identifies five younger male branch managers she believes Richert hired (two of whom may have been hired before Richert became Regional Manager), and PNC responds that Richert placed at least three women into branch manager positions (two of whom were over 40). The district court did not err in finding that, absent evidence concerning the selection of those candidates, the allegation that Richert failed to hire or promote older and/or female branch managers was insufficient to demonstrate that the proffered reasons for plaintiff's discharge were pretextual. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002). After reviewing the record and viewing the evidence in the light most favorable to the nonmoving party, we agree with the district court that Riley has not presented evidence from which a rational trier of fact could conclude that the proffered non-discriminatory reasons were pretext for age or gender discrimination.

**AFFIRMED.**