RENDERED: MAY 10, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1447-MR

LASHAWN ROBERTS                                                APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MARY M. SHAW, JUDGE
ACTION NO. 20-CI-006301

LOUISVILLE & JEFFERSON
COUNTY METROPOLITAN SEWER
DISTRICT                                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  LaShawn Roberts has appealed from the November 9, 2022, opinion and order of the Jefferson Circuit Court granting summary judgment to her former employer, Louisville & Jefferson County Metropolitan Sewer District (MSD), and dismissing her complaint seeking damages for allegations of gender discrimination and hostile work environment under Kentucky's Civil Rights Act, Kentucky Revised Statutes (KRS) Chapter 344.  We affirm.

Roberts began working for MSD in 2009, and in April 2020, she was working as a Vactor operator.[1]  On April 20, 2020, Roberts reported to a work site on Farnsley Road.  Phillip Weaver, who also worked for MSD, was the crew leader at the site that day.  While there is some dispute as to what exactly happened, Roberts and Weaver got into a verbal and physical altercation when Roberts left her truck to see what was happening in the yard and Weaver told her to return to her truck.  Roberts reported the incident to Safety and Security, and her claim was investigated.  Roberts believed that Weaver should have been terminated because of her belief that MSD had a zero-tolerance policy, but he continued working for MSD and was later promoted.  MSD granted Roberts' formal request to keep Weaver separated from her at work, noting that there may be instances where she would have to respond to his work site.  Following the April incident, Roberts' co-workers talked and joked about what had happened.  Roberts continued to work for MSD until she resigned in July 2022.

Shortly after the April incident, Roberts filed a complaint with the Kentucky Commission on Human Rights alleging race, sex, and age discrimination against MSD.  The Commission issued a Dismissal and Notice of Rights in August of that year following its investigation.  In October, Roberts filed the underlying

---

[1] A Vactor is a large truck that is used to assist in clearing sewer lines.  It has vacuum hoses as well as hoses that shoot water from a tank on the truck.

action in Jefferson Circuit Court alleging causes of action for gender discrimination, hostile work environment, and negligent infliction of emotional distress.[2]  Discovery ensued, and MSD moved for summary judgment.  The circuit court granted the motion, and this appeal now follows.[3]

Our standard of review is summarized in *Lawson v. Smith*, 652 S.W.3d 643, 645 (Ky. App. 2022):

> The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing [Kentucky Rules of Civil Procedure (CR)] 56.03).  Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the non-moving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).  Thus, a summary judgment looks only to questions of law, and we review a trial court's decision to grant summary judgment *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016); *see also Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010), *as modified on denial of reh'g* (Nov. 23, 2011).  However, "[a] party opposing a summary judgment motion cannot rely on the hope that the trier of fact" would simply "disbelieve the movant's

---

[2] Roberts acknowledged below that her common law negligent infliction of emotional distress claim was subsumed by her KRS Chapter 344 claims.  We shall not address that claim any further.

[3] We agree with MSD that Roberts' brief does not comply with the Kentucky Rules of Appellate Procedure (RAP) in several respects, including a lack of references to how issues were preserved for review (RAP 32(A)(4)), margin size (RAP 31(A)(1)(e)), and citation to unpublished authority (RAP 41(A)).  We have nevertheless opted to review the merits her arguments.

denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 790 (Ky. App. 2012) (citing *Steelvest*, 807 S.W.2d at 481).

(Footnote omitted.) We shall keep this standard in mind as we review Roberts' arguments.

Having reviewed the record, the circuit court's decision, and the parties' respective arguments, we agree with MSD that the circuit court properly granted summary judgment in this case. Because we cannot improve upon the circuit court's analysis, we shall adopt it as our own:[4]

> KRS § 344.040 protects an employee from discrimination "with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . sex . . . ."[5] To defeat a summary judgment motion, "the employee must produce 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 324 (D. Md. 2003) (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)). "Absent such evidence, the employee must rely upon the flexible, burden-shifting scheme of circumstantial proof articulated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny." *Jeffers* at 324. Here,

---

[4] We have made slight editorial changes to the circuit court's analysis that are not indicated in the text we have adopted.

[5] As Plaintiff's claims arise from protections provided under the Kentucky Civil Rights Act, which is in relevant parts substantively identical to the Civil Rights Act of 1964, the Court may look to federal case law to assist in making its decision. *Stewart v. University of Louisville*, 65 S.W.3d 536, 539 (Ky. App. 2001). [Footnote 12 in original.]

Ms. Roberts has proffered no direct evidence of discrimination. Therefore, the *McDonnell Douglas* test applies.

The *McDonnell Douglas* test requires the plaintiff to present a *prima facie* case of discrimination or retaliation. *Jeffers*, *supra* at 324; *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If the plaintiff successfully presents a *prima facie* case of discrimination, then the defendant must give a legitimate, nondiscriminatory (or nonretaliatory) reason for taking the challenged action. *Jeffers*, *supra* at 324. If the defendant satisfies this burden, the plaintiff must demonstrate that the defendant's proffered reason was pretext for a discriminatory employment decision. *Id*. The Kentucky Supreme Court succinctly articulated how this third phase operates:

> After a defendant has provided a legitimate, nondiscriminatory reason for the [adverse employment action], the *McDonnell Douglas* framework disappears. At this point, the plaintiff must persuade the trier of fact, by a preponderance of the evidence, that the defendant unlawfully discriminated against her. In order to prevail, the plaintiff must typically demonstrate that the employer's stated reason for the termination was merely a pretext, masking the discriminatory motive. In other words, a plaintiff is required to "produce sufficient evidence from which the jury [could] reasonably reject the employer's explanation." In *Manzer* [*v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1084 (6th Cir. 1994)] the court listed three methods for establishing pretext: (1) the proffered reasons are false; (2) the proffered reasons did not actually motivate the decision; and (3) the plaintiff could show

-5-

that the reasons given were insufficient to motivate the decision.

*Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 497 (Ky. 2005) (internal citations omitted). Evidence of intentional discrimination may be in the form of either "direct allegations and proof of invidious discriminatory bias, or circumstantially demonstrated by alleging or proving discriminatory conduct, practices, or the existence of significant . . . disproportionate conduct [on the basis of gender.]" *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 700 (Ky. App. 1991) (citing *Burdine*, *supra*, at 256). If proven by circumstantial evidence, "there must be cold hard facts presented from which the inference can be drawn that race or sex was a determining factor." *Id*. citing *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226 (Ky. 1984). Courts tailor the *McDonnell Douglas* test around each different type of discrimination. *McDonnell Douglas*, *supra* at 802, FN 13.

For a claim of disparate treatment discrimination, a plaintiff must prove the following in her *prima facie* case: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered a materially adverse employment action; and (4) she can show that a similarly situated employee outside the protected class was treated more favorably than her. *Com. v. Solly*, 253 S.W.3d 537, 541 (Ky. 2008). The fourth element can also be proven by showing that someone from a non-protected class replaced the plaintiff. *Peltier v. U.S.*, 388 F.3d 984, 987 (6th Cir. 2004). The first two elements are mostly self-explanatory and usually easy for a plaintiff to satisfy, but the latter two are different matters.

An adverse employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Such actions "must be more disruptive than a mere inconvenience or an alteration [of] job responsibilities." *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). "In short, the action must have a 'significant detrimental effect' on the employee's status as evidenced by objective factors, not subjective impressions." *Freeman v. Potter*, 200 Fed. Appx. 439, 442 (6th Cir. 2006) (internal citation omitted).

The fourth element requires a comparison of plaintiff's treatment with that of employees outside the protected class.

> In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment . . . , the plaintiff must prove that all of the relevant aspects of [her] employment situation are 'nearly identical' to those of the [male] employees who [she] alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.

*Solly*, 253 S.W.3d at 542, *quoting Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). Furthermore, "[b]eing similarly situated also requires that the employees 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Ms. Roberts easily meets the first and second elements of her *prima facie* case. She is a woman who

was qualified for her position as Utility III Vactor operator. However, she suffered no materially adverse employment action. [Footnote 13, related to briefing, omitted.] Ms. Roberts argues that MSD's response to her complaint was an adverse employment action that led to cascading injury including health issues that caused her to miss work. First, she protests that Mr. Weaver was not punished, going so far as to assert in her deposition that they both should have been terminated because she admitted to hitting him, violating what she characterizes as MSD's "zero tolerance" policy. This speaks to MSD's handling of the investigation, and the Court agrees with MSD for the reasons proffered in its briefs that, contrary to Ms. Roberts' contention it "did absolutely nothing to resolve" the complaint, it responded by putting into motion significant resources. Succinctly, MSD investigated the incident and determined there was inconclusive evidence of who the aggressor was, meaning that neither Ms. Roberts nor Mr. Weaver received disciplinary action consistent with Ms. Basil's description of how MSD approaches such scenarios.[6] Unlike the situations in which male employees were terminated for making physical contact with another, there was persuasive corroborating evidence for those events, and MSD previously warned those employees that they were on their "last and final" warnings. To the extent Ms. Roberts is dissatisfied with her ability to discuss the matter with MSD officials, she twice refused to do so. Ultimately, irrespective of its response to Ms. Roberts' complaint, MSD's determination not to discipline another employee is not an adverse employment action as understood under *Ellerth*, *supra*. The focus is on what an employer does directly to the plaintiff employee.

Second, Ms. Roberts argues that she suffered a constructive demotion because she switched positions to avoid Mr. Weaver after he recently received a promotion

---

[6] Angela Basil is MSD's Employee Relations Administrator.

to field specialist. As noted by MSD in its reply brief, Ms. Roberts submitted no supplemental affidavit detailing either the workplace contact she had with Mr. Weaver after his promotion or her transfer. Additionally, the promotion gave Mr. Weaver no supervisory authority over Ms. Roberts, and she does not dispute that MSD honored her accommodation request. After her requested transfer, her title, classification, and hourly rate remained the same. Ms. Roberts also characterizes as an adverse employment action other employees talking about the altercation and making jokes about it, comparing it to a scene from the film HARLEM NIGHTS (Paramount Pictures 1989). Gossip and joking about an incident are not adverse employment actions by an employer, and, in any event, there is no indication that this behavior was motivated by animus towards Ms. Roberts because of her sex.

Looking to the fourth element, which focuses on comparators, there are no other MSD employees who are similarly situated as understood in the relevant case law. As noted above, the two male employees fired for making physical contact with others were already subject to MSD's progressive discipline policy and there was clear evidence demonstrating their respective behavior. As for Mr. Weaver's dealings with Whitney McFadden, that scenario was nothing like the one at issue; there, each cast blame on the other for Ms. McFadden's rupturing a gas line while operating equipment. Neither touched the other. Ms. Roberts acknowledged that everything she knew about this event and his alleged treatment of Ms. McFadden was hearsay. Importantly, just as in the immediate situation, MSD chose not to discipline either of them.[7]

---

[7] The Court agrees with MSD that Ms. Roberts' claims do not cleanly pair up with the *McDonnell Douglas* burden shifting analysis. In large part, this is because the discrimination and harassment she cites are atypical examples that do not match employer behavior contemplated by the KCRA and the elements of a *prima facie* case of gender discrimination. [Footnote 14 in original.]

Had Ms. Roberts established a *prima facie* case of sex discrimination, MSD establishes a legitimate, non-discriminatory reason for the alleged adverse employment action, at least those for which it could control (*i.e.* its decision not to punish Mr. Weaver). MSD investigated Ms. Roberts' complaint and decided to take no action because it determined the evidence was inconclusive as to who instigated physical contact. This benefitted both Ms. Roberts because she kept her job despite telling numerous individual[s] she hit Mr. Weaver and Mr. Weaver because he received no disciplinary action when it appears he could have been acting in self-defense.

Even if Ms. Roberts could prove a *prima facie* case of sex discrimination, the record includes no "cold hard facts" that any of the things about which she complains were motivated by animus against women. With respect to the altercation itself, the record is clear that Mr. Weaver instructed Ms. Roberts several times to return to the Vactor, which multiple deponents indicated was a reasonable request. She walked towards him, not *vice versa*. As to her assertion that Mr. Weaver has "little person syndrome" and would not have put his hands on her if she were a man, this is mere speculation because Mr. Weaver had never before been in a physical altercation at work. Other witnesses characterized him as easy going, occasionally engaging in banter that initially appears as an argument but turned out to be joking between fellow employees. Additionally, his dispute with Ms. McFadden does not create the inference that MSD generally acts with animus, or even indifference, to its female employees. Looking to MSD's response to Ms. Roberts' complaints, there is nothing that indicates animus against her because she is a woman. Instead, significant MSD resources went into investigating the matter and most of the individuals who could make disciplinary decisions were women. A more plausible explanation is that HR could not determine who the

aggressor was given witness statements, especially since Ms. Roberts chose not to participate in much of the process. This was a relatively novel scenario for both the Safety and Security investigators and HR personnel.[8] For these reasons, Ms. Roberts cannot proceed with her discrimination claim.

To establish a claim of hostile work environment under KRS 344, *et seq.*, Ms. Roberts must establish, "(1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable." *Gray v. Kenton County*, 467 S.W.3d 801, 805 (Ky. App. 2014).[9] She must show that any conduct was "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the victim subjectively regarded it as abusive." *Yancey v. Sheriff of Jefferson County*, 2002-CA-000229-MR, 2004 WL 323352, at *2 (Ky. App. Feb. 20, 2004) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 760 (6th Cir. 2000)).[10] "The plaintiff

---

[8] Again, many of the examples of adverse employment actions are plainly not contemplated as such by the KCRA and relevant caselaw. Nevertheless, the Court analyzes them because they are Ms. Roberts' arguments. [Footnote 15 in original.]

[9] An employer is vicariously liable for a hostile work environment created by a supervisor with authority over the employee with one exception. *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999). The exception is an affirmative defense wherein the employer must show "by a preponderance of the evidence" two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or" the employer responded to correct the situation after receiving a complaint from the employee. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998). MSD addresses this element in its original brief, and its analysis supports its defense of the discrimination claim, at least insofar as it discusses how MSD responded to Ms. Roberts' complaint. The Court need not address it in the context of Ms. Roberts' hostile work environment claim because she cannot make a *prima facie* case as to the other elements with the sole exception of the first. [Footnote 16 in original.]

[10] We presume that the circuit court cited *Yancey*, an unpublished opinion, pursuant to CR 76.28(4)(c), which provided that "[o]pinions that are not to be published shall not be cited or

-11-

must also prove that his employer tolerated or condoned the situation or knew or should have known of the alleged conduct and did nothing to correct the situation." *Id*. (citing *Quanex*, 191 F.3d at 658-59).

> Courts must "determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" In reviewing the claims, courts must not disaggregate episodic harassment into discrete and isolated incidents. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether – taken together – the reported incidents make out such a case."

*Id*. (internal citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id*. (internal citation omitted).

The analysis of Ms. Roberts' hostile work environment claim greatly overlaps with her discrimination claim because she relies on many of the same arguments for both. In general, she argues that Mr.

---

used as binding precedent in any other case in any court of this state; however, unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court." This Rule was replaced by RAP 41 on January 1, 2023, shortly after the circuit court issued its opinion and order. While we have opted not to remove the portion of the circuit court's analysis citing to this unpublished opinion, we note that neither party cited *Yancey* in their appellate briefs.

Weaver is a weak man who would never "put his hands" on a man. But the evidence is not just that Mr. Weaver had never put his hands on another man at work; he had never put his hands on anyone. Any opinion as to his mindset during the altercation is purely speculation. There is no evidence in the record that supports her contention that his actions were motivated by Ms. Roberts' gender. Further, Ms. Roberts argues MSD promoted him to a "position of power" over her, sending her into a spiral of adverse health consequences. As discussed above, the record belies this contention. In addition to filing no supplemental affidavit substantiating her assertion that Mr. Weaver now has some supervisory power over her, MSD has accommodated Ms. Roberts' request to not work with or around Mr. Weaver. MSD did not force Ms. Roberts to take a demoted position; instead, her title, classification, and hourly rate remained the same after her voluntary transfer.

As for the unwanted comments about the event by co-workers, one of whom, Darius Calloway, may have been Ms. Roberts' supervisor at the time, multiple deponents, including Ms. Roberts herself, noted that rumors about many different inter-personal issues rapidly disseminate throughout MSD's workforce. This indicates that the comments were neither based on nor motivated by sex, to the extent they could be considered harassment. More importantly, under the totality of the circumstances these comments were neither severe nor pervasive as understood in the relevant caselaw. Instead, Ms. Roberts acknowledged during her deposition that most of this conduct was not directed at her. She heard the bulk of it secondhand. As with her discrimination claim, Ms. Roberts cannot proceed with her hostile work environment claim.

For the foregoing reasons, the opinion and order of the Jefferson

Circuit Court granting MSD's motion for summary judgment and dismissing

Roberts' claim with prejudice is affirmed.

CALDWELL, JUDGE, CONCURS.

ACREE, JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

Marilyn "Linsey" Shrewsbury
Eddyville, Kentucky

BRIEF FOR APPELLEE:

Edward L. Lasley
Bradley R. Palmer
Louisville, Kentucky